## L. P. BEARD CONSTRUCTION COMPANY v. BUSH ET AL.

[No. 12,492.   Filed April 20, 1926.]

MASTER AND SERVANT.—*Evidence held to sustain finding of Industrial Board that employee's death resulted from sunstroke.* —Evidence *held* to sustain finding of Industrial Board that the death of an employee who was engaged in laying tile in a ditch on a hot summer day resulted from sunstroke.

From Industrial Board of Indiana.

Proceedings under the Workmen's Compensation Act by Anna G. Bush and another for compensation for the death of Samuel E. Bush, opposed by the L. P. Beard Construction Company, employer. From an award in favor of claimants, the defendant appeals. *Affirmed.* By the court in banc.

*Turner, Adams, Merrell & Locke,* for appellant.
*F. A. Seal* and *E. C. Bush,* for appellees.

DAUSMAN, J.—The Industrial Board, by a majority of its members, found that "Samuel E. Bush received a personal injury by accident arising out of and in the course of his employment" which resulted in his death. Compensation was awarded to his widow Anna G. Bush, and his infant son Forrest E. Bush.   The only inference to be drawn from the record is that the majority of the members of the Industrial Board based their finding and award on the conclusion that the workman's death was due to sunstroke.   The specific contention presented by the employer is that the workman's death was not due to sunstroke but was due to Bright's disease.

The uncontroverted facts are that on July 30, 1924, the construction company was engaged in draining, grading and paving a public highway, known as the Portersville road. On that day, Mr. Bush was, and for some time prior thereto had been, employed as a laborer. At the side of the highway, an excavation or ditch had been made. The ditch was from three to four feet deep and the excavated dirt had been piled along the west side thereof. He was laying tile in the excavation. The tile was twenty-four inches in diameter. He was the only workman in the ditch. Another workman delivered the tile to him by means of a wire pulley. In putting the tile in place, Bush had to stoop over and was required to cement the joints. The tile had been exposed to the sun, and it was hotter where he was working than it was out on the road. The sun shone on him during the day. It was a hot day and there had been a continuous period of several hot days. About 3 p. m., while at work in the ditch, Bush stopped and stood against the side of the ditch. He said he was getting blind. He was unable to get out. Other workmen took him out and laid him on the ground in the shade of a tree. He lay there about three-quarters of an hour. Then Mr. Beard, of the construction company, took him to his home at the city of Washington— a distance of about a quarter of a mile. Dr. Burris, the first physician to see him, testified that his pulse was quick and his skin was dry.

Two other physicians were called to assist Dr. Burris. The patient's urine was analyzed. These three doctors testified that, in their opinion, the cause of death was sunstroke.

One physician, who had not seen the patient, testifying as an expert, said that the facts embodied in the hypothetical question would suggest diabetes. He also stated that sunstroke is not accompanied by sweating

but that the skin is dry and hot; that it would not be his opinion that Mr. Bush suffered a sunstroke; but that it would be hard to say what was the cause of death.

Counsel for the appellant insist that the workman could not have suffered a sunstroke because sunstroke is never accompanied by sweating. Are they justified in assuming that Mr. Bush perspired after the stroke came upon him?

Albert Clements was working somewhere in the vicinity where Bush was working. How near Clements was to Bush at the time the fatal affliction came upon Bush does not appear. Clements' statement is in the following words: "The first I knew he was sick he was standing over in the ditch wiping the sweat from his head. Mr. Bush did not collapse all at once. He did not work any further that afternoon." That is the only statement in the record that Bush wiped sweat from his head after he stood up in the ditch for the last time. Had this witness been properly examined, the probability is that he would have been compelled to say that he did not know whether Bush wiped his head for sweat or for something else, and that he did not know whether he was actually perspiring at that time. However, for aught that appears in the evidence, Bush may not have been perspiring at the time the stroke actually came upon him.

The diagnosis was exclusively for the men of medical science, and their testimony abundantly supports the proposition that the workman came to his death as the result of sunstroke.

The award is affirmed.